See also, D.C., 123 F.R.D. 341.

Kenneth GUENTHER, George Robinette, Andrew H. Swartz and Charles P. Stetson, Jr., suing individually and as shareholders of American Network, Inc., on behalf of themselves and other shareholders of American Network, Inc., similarly situated in and in the right of American Network, Inc., Plaintiffs,

v.

PACIFIC TELECOM, INC. a Washington corporation, E.B. Galligan, A.M. Gleason, Anthony J. Bosboom, John H. Geiger, Eric H. Randolph, Karl D. Wetzel, C.M. Binkley, Wallace F. Burnett, Dennis W. Egan, Joyce E. Galleher, Russell A. Hartman, William L. Hensley, Donald L. Mellish, Charles E. Robinson, Robert A. Sneddon, Sidney R. Snyder, A.W. Sweet, Price Waterhouse, a partnership, Donald Irving, and American Network, Inc., an Oregon corporation, Defendants.

Civ. No. 86–1650–MA.

United States District Court, D. Oregon.

Aug. 2, 1988.

David B. Markowitz, Peter H. Glade, Markowitz, Herbold, Stafford & Glade, P.C., Portland, Or., for plaintiffs Guenther, Robinette and Swartz.

Barnes H. Ellis, Stephen L. Griffith, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendant Pacific Telecom, Inc. and PTI Directors.

Thomas A. Balmer, Mark A. Turner, Lindsay, Hart, Neil & Weigler, Portland, Or., for defendants Galligan, Bosboom, et al.

Douglas M. Ragen, Julie R. Vacura, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendants Price Waterhouse and Irving.

Frank H. Lagesen, Thomas W. Brown, Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland, Or., for defendant American Network.

## OPINION

MARSH, District Judge.

Plaintiffs, former minority shareholders of American Network, Inc., move for class certification pursuant to Fed.R.Civ.P. 23(c)(1). Defendants oppose the motion to certify and in the alternative move to disqualify Kenneth Guenther, George Robi-

nette and Andrew H. Swartz as class representatives.[1]

For the reasons set forth below, plaintiffs' motion for class certification is denied and defendants' motions to disqualify plaintiffs as class representatives are denied as moot.

## BACKGROUND

Plaintiffs' fifth amended complaint sets forth nine derivative claims and seven direct claims for state and federal securities law violations, RICO violations, breach of fiduciary duty, and negligence. The alleged federal securities law violations involve representations made in SEC filings in the Fall of 1984 and the Spring of 1985; proxy statements sent to AmNet shareholders in April and November of 1984; and a prospectus filed in February 1985. Misrepresentations were also allegedly made to the press and securities brokers at unspecified times.

Plaintiffs' overall contention is that defendants participated in a scheme to intentionally defraud AmNet and its shareholders and engaged in a series of acts which greatly reduced the value of AmNet stock. Plaintiffs allege that defendants (1) participated in the issuance of large blocks of AmNet stock to Pacific Telecom, Inc. (PTI), CP National Corp. (CPN), and Ford Aerospace (Ford) for consideration worth substantially less than the real value of the stock; (2) authorized and permitted various transactions which were primarily in the best interest of PTI and without proper consideration for the interests of AmNet; and (3) made misrepresentations or omissions of material fact in SEC filings, proxy solicitations, and statements to press and securities brokers.

Plaintiffs move to certify a class consisting of:

All persons or other legal entities who owned publicly traded shares of AmNet stock from January, 1984 (the date of the initial letter of intent between PTI and AmNet regarding PTI's initial investment) through December, 1986 (the date upon which this lawsuit was filed), and who purchased that stock or warrants in the open public market.

The class definition excludes (1) directors, officers and employees of AmNet who received stock option bonuses or other incentives; (2) corporations, companies or individuals who receive distributions of stock in merger or acquisition transactions; and (3) any other holder of convertible preferred shares.

## STANDARDS

Federal Rule of Civil Procedure 23 sets forth the prerequisites for a class action. Rule 23(a) provides the following prerequisites for all class actions: (1) the class is so numerous joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The class must also qualify under one of the three subdivisions of Fed.R.Civ.P. 23(b). In this case, plaintiffs contend they satisfy rule 23(b)(3), that is, that common questions of law or fact predominate over individual questions and a class action is superior to other available methods of adjudication.

■ The burden is upon plaintiffs to show compliance with rule 23. *In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 854 (9th Cir.1982); *Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D.Cal.1985). For purposes of rule 23, the allegations of the complaint are taken as true and the court does not consider the merits of the case. *Schwartz*, 108 F.R.D. at 281. Nevertheless, the Supreme Court has recognized that "the class determination gen-

---

1. The arguments raised in defendants' motions to disqualify Guenther, Robinette and Swartz as class representatives are incorporated in their oppositions to the motion for class certification. Accordingly, defendants' motion to disqualify is considered in conjunction with the court's consideration of class certification. Defendants have also moved to disqualify Guenther, Robinette and Swartz as derivative plaintiffs. Those motions will be addressed in a separate opinion.

**336**

erally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) *(citing, Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

▮ Securities actions are considered particularly appropriate for class action treatment. *In re Computer Memories Securities Litigation,* 111 F.R.D. 175 (N.D. Cal.1986), *(citing Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975) *cert. denied* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)). Nevertheless, I have applied a "rigorous analysis" in order to insure that the prerequisites of rule 23 have been satisfied. *General Telephone Co. of Southwest,* 457 U.S. at 160, 102 S.Ct. at 2372.

### DISCUSSION

#### 1. *Numerosity*

Plaintiffs estimate that approximately 500 members fall within the identified class. I find this reasonable estimate sufficient to satisfy the numerosity requirement. *See A & J Deutscher Family Fund v. Bullard,* Fed.Sec.L.Rep. (CCH) P92,938 (C.D.Cal.1986) [1986 WL 14903]; and *Schwartz,* 108 F.R.D. at 281 (failure to state exact number of proposed class does not defeat class certification); *see also Anderson v. Bank of the South,* 118 F.R.D. 136, 145 (M.D.Fla.1987) (reasonable estimate of the number of purported class members sufficient for numerosity requirement).

#### 2. *Commonality*

▮ The requirement of commonality does not necessitate a finding that every question of law or fact is common to every class member. *Beebe v. Pacific Realty Trust,* 99 F.R.D. 60, 65 (D.Or.1983). Rather, it is only necessary that there "be at least one issue the resolution of which will affect all or a significant number of the putative class members." *Id.* "Where the same scheme operates on a class of open

market purchasers for an extended period of time, the requirement of [commonality is] satisfied." *Schwartz,* 108 F.R.D. at 282; *see also Blackie,* 524 F.2d at 902 (commonality satisfied where members of class allegedly defrauded over period of time by similar misrepresentations); *In re Unioil Securities Litigation,* 107 F.R.D. 615, 619 (C.D.Cal.1985) (continuing scheme to inflate price of stock by misrepresentations and manipulative purchases is a common question of law and fact).

The common questions of law and fact arising out of the alleged scheme to defraud AmNet and its shareholders include (1) whether defendants participated in the issuance of large blocks of AmNet stock to PTI, CPN and Ford for consideration worth substantially less than the real value of the stock; (2) whether defendants authorized and permitted various transactions which were primarily in the best interest of PTI; and (3) whether various SEC filings, policy solicitations and public statements contained misrepresentations or omissions of material fact which were misleading in light of (1) and (2) in violation of state and federal securities law. If plaintiffs are allowed to bring a direct action for breach of fiduciary duty, other common issues of law or fact will include (1) whether defendants operated AmNet to the detriment of the minority shareholders; and (2) whether AmNet's conduct constitutes a breach of fiduciary duty to the minority shareholders.

#### 3. *Typicality*

▮ The requirement of typicality is satisfied if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory. *Schwartz,* 108 F.R.D. at 282. The claims of the plaintiff need not be factually identical to the claims of the class members. *Id.; Beebe,* 99 F.R.D. 71–72.

Defendants raise two issues regarding the typicality requirement. First, defendants argue that plaintiffs' claims are not typical to the extent plaintiffs seek to represent persons who sold rather than purchased stock during the period of alleged

artificial price impact. Second, defendants assert that plaintiffs' claims are not typical because they are subject to unique defenses in that (1) plaintiffs are sophisticated investors who traded on nonpublic information; and (2) plaintiffs' claims are barred by either waiver, estoppel or ratification.[2]

■ Defendants' first argument does not defeat a finding of typicality but is relevant to my later discussion on manageability of a class action. Defendants argue that plaintiffs' claims, as purchasers, depend upon proof of price inflation while a seller's claim depends upon proof of price depression. This "conflict" does not preclude a finding of typicality. Any differences in the proof of damages is "peripheral, and substantially outweighed by the class members' common interests." *Blackie*, 524 F.2d at 909. This disparity can be addressed through the use of subclasses. *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1346 (9th Cir.1976) (Sneed, concurring); *see also Schwartz*, 108 F.R.D. at 282; *Blackie*, 524 F.2d at 909. While the necessity of subclasses to resolve this issue is not in and of itself reason to deny class certification, it is the first indicator to this court that manageability of this case as a class action is a significant issue.

Defendants also argue that plaintiffs' claims are not typical because they are sophisticated investors who traded on nonpublic information. This issue is relevant to the applicability of the fraud on the market theory.

■ The theory of fraud on the market is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194 (1988) (*quoting Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3rd Cir.1986)); *see also, Blackie*, 524 F.2d at 906. Consequently, misleading statements or omissions of material facts presumably impact the market price of securities and thereby defraud purchasers or sellers who rely on the integrity of the market when making investment decisions.

■ The fraud on the market theory is critical to a 10b class action because it creates a presumption of reliance which alleviates the need of proving individual reliance. The presumption may in turn be rebutted by "any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic, Inc.*, 108 S.Ct. at 992.

This court has discovered varying approaches in evaluating the relevance of rebuttal evidence at the class certification stage. The predominant approach appears to postpone addressing the issue on the basis that it involves the merits of the class action and/or on the basis that individual issues of reliance do not render the plaintiffs' claims atypical.

In *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J.1984), *rev'd on other grounds*, 843 F.2d 1537 (3rd Cir.1988), for example, the court acknowledged that there was a question whether the prerequisites for the application for the fraud on the market theory had been met due to the fact that the trading on the over-the-counter market may not constitute an efficient market and due to the fact that the plaintiffs may have relied upon different pieces of information in making trading decisions. *Id.* at 138–39.

Nevertheless, the court concluded that the typicality requirement was satisfied due to the fact that (1) "a plaintiff's claim is typical of the class if it arises from the 'same event or course of conduct;'" (2) "differing types of reliance are present in almost every securities class action;" (3) the defense of non-reliance "goes to the merits of the case and cannot be considered by the court on a certification motion;" and (4) "whether individual reliance will be a necessary element of plaintiffs' claim or whether plaintiffs will be able to travel on the presumptive reliance of the fraud-on-

---

**2.** The second argument raised by defendants is also relevant to whether common issues of law or fact predominate. The argument is addressed most fully here for purposes of clarity.

the-market theory is itself a question that is common to and typical of the entire class." *Id.* at 139–40; *See also, Biben v. Card*, Fed.Sec.L.Rep. (CCH) P92,462 (W.D. Mo.1986) [1986 WL 1199] (class certification not precluded where plaintiffs allegedly relied upon advice of brokers privy to insider information in making investments decisions); *In re: Western Union Securities Litigation*, 120 F.R.D. 629 (D.N.J.1988) (class certification not precluded where plaintiff allegedly relied upon materials supplied by corporation in making investment decisions); *But see, Epstein v. American Reserve Corporation*, 1988 U.S.Dist.Lexis 3382 (N.D.Ill.1988) [1988 WL 40500] (class certification precluded where plaintiffs relied exclusively upon broker's recommendation in making investment decisions *and* (1) broker purchased stock after alleged fraudulent information had become known; (2) broker's strategy was to purchase speculative stock; (3) broker allegedly traded on insider information; and (4) broker was member of board of directors of corporation which was largest shareholder of the defendant corporation).

█ Based upon my review of the cases and the underlying factual allegations in the present case, I conclude that the issue raised by defendants concerning plaintiffs' reliance on nonpublic information does not render their claims atypical. I reach this conclusion for several reasons. First, to evaluate whether plaintiffs relied on nonpublic information would be to improperly consider the merits of this case beyond the consideration allowable in all class certification motions. Second, I do not believe that the defense of nonreliance is necessarily atypical to the class. Hence, it is not a "unique" defense as are estoppel, waiver and ratification which now must be addressed.

Defendants' final argument is that plaintiffs' claims are atypical because plaintiffs are subject to the unique defenses of waiver, estoppel, and ratification. In *Ross v. Bank South, N.A.*, 837 F.2d 980 (11th Cir. 1988), the court addressed the relevancy of arguably unique defenses assertable against class representatives:

> The existence of a unique defense certainly is relevant to the certification decision. The existence of even an arguable defense can vitiate the adequacy of representation if it will distract the named plaintiff's attention from the issues common to the class. The certification of a class is questionable "where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass."

837 F.2d at 990–91 (citations omitted); *see also Zenith Laboratories, Inc. v. Carter–Wallace, Inc.*, 530 F.2d 508, 512 (3rd Cir.) *cert. denied* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) (where unique defenses could conceivably become focus of litigation and divert much of plaintiff's attention from the suit as a whole, remaining members of class could be severely disadvantaged); *Epstein,* 1988 U.S.Dist. LEXIS 3382 [1988 WL 40500] (*quoting, Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974) (where it is predictable major focus of litigation will be on arguable defense unique to named plaintiff or small subclass, named plaintiff is not proper class representative)).

Defendants submit that soon after the transactions which are the subject of this action, Guenther and Robinette consulted their mutual stockbroker and an attorney concerning the perceived dilution of their stock. Guenther testified that he considered filing a class action "mid-year" in 1986. Notwithstanding, Guenther continued to purchase AmNet stock through July, 1986. Moreover, Robinette purchased AmNet stock through March, 1987. Thus, Robinette continued to purchase stock even after the original filing of this action by Charles Stetson.

Based on the arguable defenses which can be raised from the foregoing facts, I conclude that plaintiffs may ultimately devote a great deal of their effort toward addressing these defenses and away from the common issues of law and fact. I also conclude that there is a substantial likelihood that the unique defenses could be-

come the focus of the litigation to the detriment of the class. Accordingly, I conclude that plaintiffs' claims are not typical of the class members' claims.

### 4. *Adequacy of Representation*

■ The requirement that plaintiffs fairly and adequately protect the interests of the class is satisfied if (1) plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation; and (2) the action is not collusive and plaintiffs' interests are not antagonistic to those of the class. *In re Unioil Securities Litigation*, 107 F.R.D. at 621–22.

Whether there is any potential conflict with the class is considered under the typicality requirement, *supra*. After reading excerpts of plaintiffs' depositions, I am not convinced that they lack credibility or sufficient knowledge of the factual basis of this case so as to be inadequate representatives.

Defendants do not challenge the adequacy of plaintiffs' counsel and there is no evidence indicating that counsel is unable to competently conduct the proposed litigation.

### 5. *Predominance of common questions of law or fact*

Defendants' primary argument concerning the requirement of predominance of common questions involves the applicability of the fraud on the market theory. Defendants argue that the theory is inapplicable due to plaintiffs' failure to allege or prove the existence of an efficient market. Defendants contend that if the theory does not apply, plaintiffs will be required to prove individual reliance in order to recover under 10b and that such proof will predominate over any class issues. Defendants also argue that because plaintiffs relied upon nonpublic information in making investment decisions, individual reliance issues will predominate. This issue was rejected under typicality, *supra*, and is similarly rejected here.

Defendants' argument regarding the existence of an efficient market raises two issues: (1) Whether the determination of an efficient market is a proper issue to be resolved on a class certification motion; and (2) if it is, whether plaintiffs have alleged facts sufficient to support a finding of an efficient market.

The cases addressing the factors which create an efficient market are somewhat vague. In *In re Data*, the court defined an efficient market as a "large, impersonal actively traded market." 103 F.R.D. at 138 (*quoting In re Ramada Inns Securities Litigation*, 550 F.Supp. 1127, 1131 n. 6 (D.Del.1982)). Similarly, in *Basic, Inc.*, the Supreme Court noted that the presumption of reliance is supported by empirical studies that "the market price of shares *traded on well-developed markets* reflects all publicly available information." 108 S.Ct. at 991.

District courts, on the other hand, have been more specific as to what constitutes an efficient market. In *Epstein*, for example, the court held in response to a class certification motion, that the over-the-counter market is incapable of meeting the Supreme Court test of an efficient market set forth in *Basic, Inc.*, 1988 U.S.Dist. LEXIS 3382 [1988 WL 40500]. In so doing, the court concluded that without the presumption of reliance, individual issues of reliance would necessarily predominate over any issues common to the class. *Id.*

In *A & J Deutscher Family Fund*, the court discussed whether class certification should be denied on the basis that plaintiffs failed to establish that stock was traded on an efficient market. The court stated:

[D]efendants cite no authority for denying a class certification motion on the ground that an efficient market has not been shown. In the two cases where a court has confronted this question one found that it is not necessary to determine the applicability of the fraud-on-the-market theory prior to class certification, *In re Data Access Systems*, 103 F.R.D. at 133–36, while the other concluded that a pleading that the stock was traded on the New York Stock Exchange was a sufficient showing of an efficient market for purposes of class certification. *See Levinson v. Basic, Inc.*, 786 F.2d 741 (6th Cir.1986) [*vacated and remanded,*

485 U.S. 2, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ].

Fed.Sec.L.Rep. P92,938 at 94,579.

The court went on to note that the defendants' stock was traded on the New York Stock Exchange; that the complaint alleged that over five million shares were traded and widely disbursed during the class period; and that the company regularly disseminated SEC required information and press releases that were assessed by market analysis. Based on that record, the court concluded that "it is inappropriate to determine as a matter of law whether the market was inefficient."

In the present case, plaintiffs make no allegations regarding the amount of stock which was publicly traded or whether AmNet stock was listed on the New York Stock Exchange. Incidentally, plaintiffs note that AmNet stock is "presently publicly traded." Defendants, on the other hand, specifically address the issue and stress that AmNet stock was not quoted on NASDAQ until mid-March, 1985, and delisted between February and May, 1986. Defendants also note that AmNet stock was not listed on the NASDAQ National Market System until after the close of the class period.

Based on this record, I cannot conclude whether plaintiffs will ultimately be successful in proving that AmNet stock was traded on an efficient market. The requirement of proving an efficient market, however, is an issue of law common to all members of the class. Consequently, the existence of this issue does not frustrate a finding that common issues of law and fact predominate. Moreover, at the class certification stage, this court is not to closely scrutinize the merits of the class action.

The primary reason that the predominance requirement cannot be satisfied is that the arguable unique defenses assertable against plaintiffs may predominate and become the focus of the litigation. It is for this reason that I conclude common issues of law and fact do not predominate.

### 6. *Superiority*

In order to be certified as a class under rule 23(b)(3), I must find that a class action is the superior method of adjudicating this action. Because the purpose of the superiority requirement is to ensure that a class action is the most efficient and effective means of adjudication, one matter pertinent to this finding is "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

While this action might be manageable in the absence of the unique defenses assertable against plaintiffs, there are distinct manageability problems which this court has considered. Primarily, the issue revolves around the necessity of subclasses. Plaintiffs have not directly addressed this issue but it has become apparent to the court that subclasses would ultimately be necessary. Plaintiffs broadly define the class to include all persons who owned publicly traded shares of AmNet stock from January, 1984, through December, 1986.

To recover under 10b, plaintiffs must show that they purchased or sold stock "in connection" with the alleged misrepresentation or omission. 15 U.S.C. § 78j(b) (1982). Thus, purchasers or sellers would be a subclass. The purchaser/seller subclass would have to be further divided for the purposes of damages as discussed under typicality.

To recover under plaintiffs' claims for false proxy solicitation, the class members must have been a shareholder of record in April, 1984 and/or November, 1984, but not necessarily a purchaser or seller. 15 U.S. C. § 78n(e) (1982). Thus, two more subclasses.

Finally, to recover under RICO, the class members must prove two predicate acts of racketeering activity. Thus, any class member who could not establish two predicate acts would have to be excluded from this subclass. 18 U.S.C. § 1961(5) (1982).

The foregoing analysis has caused me to conclude that if this class were certified, the actual litigation of the case would present serious manageability problems which plaintiffs have not adequately addressed in their motion. Consequently, this is an additional consideration which weighs against certification.

## CONCLUSION

Based on the foregoing, class certification is denied on the basis that plaintiffs have failed to satisfy Fed.R.Civ.P. 23 in that (1) plaintiffs claims are not typical of the class members' claims; (2) common issues of law and fact do not predominate; and (3) a class action is not the superior method of adjudication for this controversy. Accordingly, plaintiffs' motion for class certification # 222 is denied. Defendants' motions to disqualify Guenther, Robinette and Swartz as class representatives # 280, # 287, and # 297 are denied as moot.

See also, D.C., 123 F.R.D. 333.