My Commission Expires:

_____

In re BADGER MOUNTAIN IRRI-GATION DISTRICT SECURI-TIES LITIGATION.

Richard BRAUN, et al., Plaintiffs,

v.

Jerry SMITH, et al., Defendants.

No. C88-1587R.

United States District Court,
W.D. Washington,
at Seattle.

May 14, 1992.

Michael Mines, Betts, Patterson & Mines, Seattle, Wash., for plaintiffs.

Thomas J. Heye, Heye & Chvatal; Rembert Ryals, Critchlow, Williams & Schuster, Richland, W. Va.; Francis L. Van Dusen, Jr., Miller, Nash, Wiener, Hager & Carlsen, Seattle, Wash.; R. Alan Wight, Thomas C. Sand, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or.; Christopher Brian Wells, Paul Douglas Swanson, Lane, Powell, Spears, Lubersky; Edward Read Langenbach, Jr., Cable, Langenbach, Henry, Watkins & Kinerk; and Allan H. Baris, and Harold Roland Hofstedt, Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendants.

James S. Turner, pro se.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiffs' motion for class certification. Having reviewed the motion together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. BACKGROUND

Plaintiffs seek certification as a class all those who, on December 31, 1985, held General Obligation Bonds issued by the Badger Mountain Irrigation District. Marketing of the $5,000,000 in bonds began in early 1977, to finance the development of an irrigation system. The Badger Mountain Irrigation District was composed of approximately 4,000 acres of arid land targeted for development in the "Tri–Cities" region, near Richland, Pasco, and Kennewick, Washington. The irrigation project was intended to support both residential and agricultural development.

The Badger Mountain Irrigation District levied assessments on the land within the

District, but could not raise sufficient funds to continue debt service on the bonds. On December 31, 1985, the District filed for bankruptcy, triggering a bond default.

Plaintiffs contend that defendant Foster & Marshall marketed the bonds without disclosure of the serious risks regarding the security behind their investment. Instead, allege plaintiffs, Foster & Marshall uniformly marketed the bonds as a standard municipal offering with attractive tax-free yields. According to plaintiffs, the project was of dubious financial feasibility from its inception, and the District faced potential default throughout the early 1980's. Plaintiffs contend that Foster & Marshall continued to market the bonds as late as July of 1985 without corrective disclosure or other warnings of the bonds' known deficiencies.

Defendants include the bond underwriters, Foster & Marshall, and bond counsel, attorney Robert Campbell and others from the law firm of Roberts, Shefelman, Lawrence, Gay & Moch ("Roberts & Shefelman"). Defendants contend that purchasers of the bonds during the initial offering were provided with a written Official Statement. Defendants highlight language within the Official Statement which warns that the "success of the irrigation project and the land development to be undertaken by the property owners in the District is speculative in nature." The Official Statement continues that "there is no assurance that [the developers'] projects within the District will be successful," and that "payment of the principal and interest on the bonds, and the value of the security for the bonds, will depend in large measure upon successful development ..." Affidavit of Allan A. Barrie, Exhibit A, Official Statement, "Bondholders' Risk," at 6.

Defendants further contend that the irrigation system worked, and interest and principal were paid on schedule, for eight years prior to default. Defendants explain that the recession felt in the Tri-Cities area in the 1980's was aggravated by the can-

celled construction of Washington Public Power Supply System power plants and cutbacks at the Department of Energy's Hanford facility. According to defendants, this was the primary reason for the bond default.

## II. DISCUSSION

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to all members; (3) claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

The class must also qualify under one of the three subdivisions of Fed.R.Civ.P. 23(b). In this case, plaintiffs contend that they satisfy Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions and that a class action be superior to other available methods of adjudication.

The moving party has the burden of showing that its claims are appropriate for class certification. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985). For purposes of a class certification motion, the court shall regard allegations in the complaint as true. *Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 333, 335 (D.Or. 1988). Although the determination of class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs' cause of action," the court shall not consider the merits of the case. *Guenther*, 123 F.R.D. at 335–336 (*quoting, General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)).

### A. Numerosity.

A reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1). *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136

F.R.D. 658, 662 (D.Or.1991). Plaintiffs estimate that the number of bondholders is 324. This satisfies the numerosity requirement, as the court finds that joinder of hundreds of bondholders is impracticable.

### B. Commonality.

■ Under Rule 23(a)(2), the court must find that questions of law or fact common to class members predominate over any questions pertaining only to individual members. Fed.R.Civ.P. 23(a)(2). The presence of individual questions precludes class certification only when they would predominate over the common issues. *See, In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 807 (S.D.Cal.1990) ("it would defy common sense to find that class certification is defeated by the possibility of individual questions appertaining to one of the elements of the case's cause of action").

Defendants contend that questions regarding individual plaintiffs' reliance on oral misrepresentations predominate over common questions of law or fact, thereby precluding class certification. The bond purchasers relied exclusively on the assurances of their Foster & Marshall brokers that investment in the District's bonds was sound. Declaration of Paul Swanson, at 2–3, ¶¶ 8, 9. Apparently, purchasers were not furnished with copies of the Official Statement, if at all, until after their purchase. Declaration of Charles Reed, Exhibit M, Deposition of Stan Bryant, at 87. Defendants argue that such individual, oral misrepresentations constitute individual questions of reliance.[1]

Plaintiffs conten l that such oral misrepresentations do not preclude class certification on three grounds: (1) all class members were defrauded by a common course of conduct; (2) reliance may be presumed when material facts are omitted; and, (3) reliance may be presumed when a fraud creates the market for the bonds.

### 1. Common Course of Conduct.

■ The Ninth Circuit has held that class certification is proper when a class of purchasers is defrauded over a period of time by similar misrepresentations due to defendants' common course of conduct. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975) *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Regardless of whether plaintiffs are entitled to a presumption of reliance, class certification is appropriate if common questions predominate over individual questions of reliance. *In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 806 (S.D.Cal.1990). Where plaintiffs allege a common course of wrongdoing based on the same misrepresentations, individual issues of reliance do not preclude certification of the class. *Id.* at 806; *see also, Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1460 (S.D.Cal.1988) (holding that allegations of a common course of conduct, through defendants' similar misrepresentations and omissions, creates common questions sufficient to certify the class even though the class was not entitled to a presumption of reliance).

In *Blackie*, the class was composed of purchasers of Ampex Corporation's stock over a two-year period. Plaintiffs allegedly purchased at an artificially inflated price due to defendants' misrepresentations of Ampex's financial status. The court reasoned that although the alleged misrepresentations were contained in 45 different documents issued over the two-year period, and each purchaser relied on "a different set of accounting facts," defendants consistently misrepresented the adequacy of reserves, thereby creating a source of price inflation common to every purchaser. *Blackie*, 524 F.2d at 904–905. The court found that plaintiffs alleged a course of conduct by defendants that presented com-

---

1. Defendants Robert Campbell, and the law firm of Roberts & Shefelman, contend that as bond counsel they owed no duty to plaintiffs to disclose the financial condition of their client, the Badger Mountain Irrigation District, in connection with the issuance of the bonds. The court finds, however, that bond counsel's argument goes to the merits of the case and is not appropriate for consideration on a motion for class certification. *In re Victor Technologies Sec. Litig.*, 102 F.R.D. 53, 58 (N.D.Cal.1984), *citing, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974).

mon questions of law and fact. *Blackie*, 524 F.2d at 902–904.

Similarly, in *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987), the court found that "the defendant brokerage firms and individual officers engaged in a common course of conduct to misrepresent, by affirmative acts and omission, the financial condition of [the investment funds]." The court held that this common course of conduct was sufficient to support class certification. *Kirkpatrick*, 827 F.2d at 722–724. The court specifically rejected the district court's conclusion that since plaintiffs' claims involved primarily oral representations, individual issues of reliance would predominate. *Kirkpatrick*, 827 F.2d at 724.[2]

Plaintiffs contend that all class members were defrauded by defendants' common course of conduct. Complaint, ¶¶ 22, 73. The class representatives have testified that their brokers told them that the bonds were safe municipal bonds, secured by all property within the district including up to 200 homes. Declaration of Charles Reed, at 3–4, ¶ 14. Brokers for Foster & Marshall have corroborated plaintiffs' testimony. Declaration of Charles Reed, at 3–4, ¶ 14; Declaration of Charles Reed, Exhibit N, Deposition of Dennis Waldock, at 15, 22.

The court is unpersuaded by Foster & Marshall's attempts to demonstrate that there were material variations in their brokers' presentations. *See*, Foster & Marshall, Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Class Certification, at 6. Defendants only show that prior to the District's default, a Foster & Marshall broker, Michael Walker, who had not been involved with the original marketing of the bonds, recommended to his clients that they sell their investment in the District's bonds. Affidavit of Michael Walker, at 2, ¶¶ 2–4. None of the representative plaintiffs, however, were Mr. Walker's clients. *Id.* at 2, ¶¶ 2–4. The depositions of bond purchasers cited by defendants otherwise support plaintiffs' description of brokers' presentations. *See*, Declaration of Paul Swanson, Exhibit A, Deposition of Richard Braun, at 35–36; Declaration of Paul Swanson, Exhibit E, Deposition of Henry De-Motts, at 80; Declaration of Paul Swanson, Exhibit D, Deposition of Edwin Sherwood, at 60, 67–68.

Plaintiffs' allegations of defendants' common course of conduct provide sufficient common questions of fact and law to support class certification. As the court finds that individual questions do not predominate over issues common to the class, the court need not consider at this time whether plaintiffs are entitled to a presumption of reliance under either the "fraud created the market" theory, or plaintiffs' assertion that defendants' fraud is based entirely on material omissions. *See, In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 806 (S.D.Cal.1990); *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1460 (S.D.Cal.1988).

### C. Typicality.

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Defendants contend that the claims of the nominal plaintiffs are not typical of those of the class on the grounds that: (1) the nominal plaintiffs purchased the bonds during the initial offering, and most of the other class plaintiffs purchased on the secondary market; (2) the nominal plaintiffs signed con-

---

**2.** Defendants' suggestion that reliance on oral misrepresentations precludes class certification as a matter of law is without merit. The cases on which defendants rely are inapposite. In each the court found that the alleged misrepresentations or nondisclosures were not common to the class for reasons beyond the fact that the misrepresentations were oral. *See, Clark v. Watchie*, 513 F.2d 994, 999–1000 (9th Cir.1975) (alleged misrepresentations not made to every purchaser), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); *Soper v. Valone*, 110 F.R.D. 8, 9–10 (W.D.N.Y.1985) (various plaintiffs had invested with different types of entities, had spoken with different investment consultants, and had dissimilar financial goals); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888–891 (D.N.J.1984) (brokers made "highly individualized presentations to their clients"); *Simon v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 482 F.2d 880, 882–883 (5th Cir.1973) (no common course of conduct because brokers' representations contained material variations).

tracts containing choice-of-law clauses requiring application of New York law; (3) the nominal plaintiffs' contracts also require arbitration at the option of defendants; and, (4) 51 bondholders reside outside of the state of Washington.

*1. Plaintiffs who Purchased on the Secondary Market.*

■ Defendants contend that plaintiffs' pendant state law claims can not be asserted by plaintiffs who purchased their bonds on the secondary market. Defendants argue that plaintiffs' state law claims under the Washington State Securities Act (WSSA), require a direct buyer-seller relationship. Defendants contend that for this reason, only purchasers in the initial distribution of the bonds may make these state law claims.

The court finds, however, that the Washington State Supreme Court has interpreted the term "seller" under WSSA broadly, including within the meaning of the term those who were a "substantial contributive factor in the sales transaction." *Haberman v. Washington Public Power Supply System*, 109 Wash.2d 107, 131, 744 P.2d 1032 (1987). The Washington Court expressly rejected the argument that WSSA only imposed liability on the literal seller of a security who passes title directly to the plaintiff. *Haberman*, 109 Wash.2d at 125–130, 744 P.2d 1032. The *Haberman* Court reasoned that because WSSA was modeled after the federal Securities Act of 1933, and because the majority of federal circuits have construed the term "seller" to include all those who were a substantial factor in causing the transaction to take place, liability could be imposed under WSSA on a person other than the immediate seller, provided that person was a substantial factor in the sale. *Id.* at 125–130, 744 P.2d 1032 (citations omitted). Plaintiffs in this action who purchased on the secondary market therefore may seek relief under WSSA.

Courts have certified classes that include both public offering and aftermarket buyers. *See, Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir.1976). In *Weinberger v. Thornton*, 114 F.R.D. 599, 604 (S.D.Cal. 1986), the court found that so long as the same course of conduct by defendants allegedly caused all of the plaintiffs' injuries, the requirement of typicality between public offering purchasers and aftermarket purchasers was satisfied. Accordingly, this court finds that the injuries allegedly caused by defendants are typical of both plaintiffs who purchased on the initial offering and plaintiffs who purchased on the secondary market.

*2. Plaintiffs Who Have Signed Contracts Containing Choice-of-Law and Arbitration Clauses.*

■ Defendants contend that because five of the six nominal plaintiffs signed contracts with choice-of-law agreements that would require application of New York law, class certification is not appropriate. *See,* Supplementary Affidavit of Allan A. Barrie, Exhibits A–E; Affidavit of Allan A. Barrie, Exhibit J. Defendants further contend that because each contract contains an arbitration clause, the nominal plaintiffs have waived their right to seek a court remedy. *Id.*

Defendants, however, fail to show any actual obstacle to class certification on either of these grounds. Defendants have made no showing that the contracts they point to would be applicable in this case. Nor has any defendant sought arbitration. The court is persuaded that should these problems materialize, they could be addressed by creating sub-classes.

*3. Plaintiffs Residing Outside the State of Washington.*

■ Defendants contend that the class should not be certified with respect to plaintiffs' state law claims, as 51 bondholders reside outside the state of Washington. Defendants contend that this would create choice-of-law difficulties that would preclude class certification.

■ Washington choice of law doctrine applies to the state law claims brought under this court's supplemental jurisdiction. Under the Washington doctrine, a two-step analysis is required. *Southwell v. Widing Transp., Inc.*, 101 Wash.2d 200, 204, 676 P.2d 477 (1984). The first step involves an evaluation of the con-

tacts with each interested jurisdiction, considering which contacts are most significant and where these are found. *See, Lewis v. Berry,* Fed.Sec.L.Rep., (CCH) ¶ 92,355 at 92,297 (W.D.Wash.1985). Although this litigation has substantial contacts outside of Washington with respect to the plaintiffs who reside in other jurisdictions, all defendants reside or do business in Washington, and the alleged wrongful acts occurred in Washington. The nonresident plaintiffs' contacts outside of Washington do not therefore preclude consideration of their claims under Washington law.

The second step involves an evaluation of the interests and public policies of potentially concerned jurisdictions. Under facts similar to those presented here, this court has previously determined that Washington state law is stronger than other jurisdictions with respect to the issues of scienter and reliance. *See, Lewis v. Berry,* Fed.Sec.L.Rep., (CCH) ¶ 92,355 at 92,297 (W.D.Wash.1985). Accordingly, the application of Washington law is appropriate regardless of where each plaintiff resides or where the bond was purchased. Any unnamed class members who do not choose to apply Washington state law may opt out of this litigation at any time. *Id.* at 92,297; *see also, In re Worlds of Wonder Securities Litigation,* Fed.Sec.L.Rep. (CCH) ¶ 95,004 at 95,628–629, 1990 WL 61951 (N.D.Cal.1990) (finding that California law should be applied to pendant state law claims in a class action involving class members from many states, as defendants had not shown that any jurisdiction had a greater interest in applying its own law than in assuring the maintenance of a class action). The court therefore rejects defendants' argument that the law of many different states must be applied.

### D. Adequacy of Representation.

Rule 23(a)(4) requires that the representative plaintiffs fairly and adequately protect the interests of the class. Fed. R.Civ.P. 24(a)(4). In addition, plaintiffs' counsel must be qualified and competent to conduct the litigation. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1323 (9th Cir.1982).

### 1. Adequacy of Representative Plaintiffs.

██ Defendants contend that the nominal plaintiffs are not familiar enough with the case to adequately protect the interests of the class. According to defendants, the nominal plaintiffs' unfamiliarity with the case is demonstrated by the fact that they did not participate in drafting the complaint, and they did not understand the allegations directed against bond counsel. Declaration of Paul Swanson, at 3–4, ¶¶ 11–12. Defendants further contend that the fact that plaintiff Carroll Barber has twice failed to appear for her deposition indicates her inadequacy in the role of representative plaintiff. Affidavit of Francis L. Van Dusen, Jr., at 2, ¶¶ 2–3.

██ The level of sophistication and legal background necessary to aid counsel in drafting the complaint is not required of the representative plaintiffs. *See, Klein v. A.G. Becker Paribas, Inc.,* 109 F.R.D. 646, 651 (S.D.N.Y.1986). Nor does plaintiffs' lack of familiarity with the particulars of the allegations against bond counsel defeat the adequacy of their representation. The class representatives are members of the Bondholders Committee, who have spent six years involved in the bankruptcy proceedings. The court is persuaded that this is a better indicator of the representative plaintiffs' willingness and ability to vigorously prosecute their legal rights than their familiarity with various legal theories. Finally, the court is not unduly concerned by plaintiff Carol Barber's failure to appear for her scheduled depositions. Plaintiffs' counsel had warned defendants that she would be in the middle of her vacation, and that a variety of reasons could prevent her arrival at the resort that served as the arranged meeting place. Declaration of Carl Hagens, at 2–3, ¶¶ 1–6.

### 2. Adequacy of Plaintiffs' Counsel.

Defendants also contend that plaintiffs' counsel is not competent to conduct the litigation. Defendants allege that plaintiff Edwin Sherwood expressed dissatisfaction with plaintiffs' counsel by affidavit dated December 6, 1991. Supplemental Declara-

tion of Christopher B. Wells, at 2–3, ¶¶ 3–5. Further, defendants allege that plaintiffs' counsel failed to inform plaintiffs of defendants' settlement offer prior to its rejection. Defendants argue that these issues raise serious concerns with regard to counsel's adequacy.

Defendants' allegations, however, are not supported by the evidence. Plaintiff Edwin Sherwood states that, "[in the Supplemental Declaration of Christopher B. Wells cited above,] Mr. Wells has taken my statements out of context and presented them in a highly misleading fashion." Responsive Declaration of Edwin Sherwood, at 2, ¶ 1. Mr. Sherwood explains that he was not expressing dissatisfaction with plaintiffs' counsel in his affidavit of December 9, 1991, but rather was voicing his concern that attorneys' fees should not come out of the bondholders' interest in the bankruptcy. *Id.* at 2, ¶ 2. His concern was subsequently addressed by counsel. *Id.* at 2, ¶ 2.

Mr. Sherwood also explains that plaintiffs' counsel has kept them well-informed of all important events in the litigation, "including defendants' preposterous initial settlement proposal." *Id.* at 2, ¶ 3. The court finds that plaintiffs' counsel has demonstrated his competence and ability to conduct the litigation. Accordingly, the adequacy of representation requirements of Rule 23(a)(4) have been met.

*E. Superiority of a Class Action over Other Available Methods.*

In addition to the requirements of Rule 23(a), Rule 23(b) also imposes the requirements that common questions of law or fact predominate over individual questions, and that a class action be superior to other available methods of adjudication. Fed.R.Civ.P. 23(b)(3). The court has already determined that common questions predominate over individual questions, thus satisfying the first element of Rule 23(b)(3).

The second element is also satisfied on the facts presented by this matter. The average class member holds approximately $15,000 in face value of bonds. This is an insufficient investment to justify each individual financing a complex securities fraud action against sophisticated defendants. In addition, the initiation of potentially hundreds of similar actions would not serve the interests of judicial economy. The court therefore finds that a class action is superior to other available methods of adjudication.

NOW, THEREFORE, plaintiffs' motion for class certification is GRANTED.