**In re MDC HOLDINGS SECURITIES LITIGATION.**

**This Document Relates to: ALL ACTIONS.**

**Civ. No. 89–0090–E(BTM).**

United States District Court, S.D. California.

Nov. 21, 1990.

As Amended Dec. 12, 1990.

William S. Lerach, Patrick J. Coughlin, Helen J. Hodges, Michael R. McCabe, Milberg Weiss Bershad Specthrie & Lerach, Edward M. Gergosian, Kirk B. Hulett, Barrack, Rodos & Bacine, San Diego, Cal., for plaintiffs.

Robert L. King, Bruce G. Merritt, Debevoise & Plimpton, Los Angeles, Cal., Robert B. Von Mehren, Edwin G. Schallert, Gary W. Kubek, Debevoise & Plimpton, New York City, for defendants Lambert Brussels Associates Ltd. Partnership, Groupe Bruxelles Lambert S.A. and Pargesa Holding S.A.

J. Anthony Sinclitico, III, Meryl L. Young, Gibson, Dunn & Crutcher, San Diego, Cal., for defendant Touche Ross & Co.

Mark W. Smith, Katherine A. Lauer, Latham & Watkins, San Diego, Cal., Edwin B. Mishkin, Richard F. Ziegler, Andrew Weissman, Martin Marvet, Michael R. Chayet, Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants Frederick Joseph, Robert Linton, William Brown, Richard Bruce, Maurits Edersheim, Edwin Kantor, Roger Jospe, Anthony Lamport, David Meadow, Stanley Schiff, Joseph Vitanza, Peter Schild, John Kissick, John Coffin, George Anderson, Haig Casparian, Hercules Segalas, Alexander Chapro, Aaron Eshman, Stephen Weinroth, Andrew Morse, Burton Siegel, David Kay, Herbert Bachelor, Eugene Glaser, Richard Wright, Allan Sher and Leon Black.

John E. Ponder, Sparber, Ferguson, Naumann, Ponder & Ryan, San Diego, Cal., Frederick P. Hafetz, Susan R. Necheles, Adam Thurschwell, Goldman & Hafetz, New York City, for defendant Bruce Lee Newberg.

Patricia L. Glaser, Christensen, White, Miller, Fink & Jacobs, Los Angeles, Cal., for defendant Gary Winnick.

Clara A. Pope, Kaye, Scholer, Fierman, Hays & Handler, Los Angeles, Cal., Peter M. Fishbein, Gregory J. Wallance, New York City, Steven R. Andrews, P.A., Bonita Springs, Fla., for defendant James H. Dahl.

Charles L. Birke, Karen L. Skylar, Sandler and Rosen, Los Angeles, Cal., Steven B. Rosenfeld, Jonathan H. Hurwitz, Colleen McMahon, Paul Weiss Rifkind Wharton & Garrison, New York City, for defendant Michael R. Milken.

Robert G. Steiner, R. William Bowen, Charles A. Danaher, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant Joseph Murphy.

Howard P. Miller, Frederick J. Brookwell, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., Michael O. Finkelstein, Lord Day & Lord, Barrett Smith, New York City, for defendant Lowell J. Milken.

## MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

Several actions have been consolidated in this class action and shareholder derivative suit. Plaintiffs Flora Masry, Markleebeth, Inc., Milton Hollander, Morton Gordon, and William Boyle allege seven causes of action based on federal securities laws and state common law. MDC Holdings, Inc. is engaged in real estate development, sales, and financing businesses. Drexel Burnham Lambert is MDC's underwriter and investment banker, and Touche Ross & Co.

is MDC's accountant. Plaintiffs allege that the three groups of defendants (MDC, Drexel, and Touche) issued a series of favorable public statements about the financial performance, management, and future business prospects of MDC which were materially false and misleading. These statements allegedly operated to inflate artificially the market price of MDC securities during the time plaintiffs purchased stocks and bonds (April 1, 1985 to April 6, 1989).

The Securities and Exchange Commission ("SEC") investigated the transactions and reports. On May 18, 1988, MDC began to reveal adverse facts about the SEC's investigation of the accounting for certain transactions, the actual corporate losses, and the amount of the quarterly dividend. Plaintiffs allege that the disclosures between May 18 and November 22, 1988 were incomplete. They allege that it was not until April 6, 1989, when MDC released its 1988 Annual Report, that the full truth about MDC began to be revealed.

On September 11, 1989, MDC agreed to settle the SEC charges with respect to eight real estate transactions during fiscal years 1985 through 1987. The SEC found that:

> MDC failed to comply with Section 13(b)(2)(B) of the Exchange Act, with respect to the dissemination of, coordination with, or consideration by responsible officials in MDC's accounting, finance, legal and operations departments of information required to account properly for the transactions described in this Order, in that it failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are executed in accordance with management's general or specific and that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and any other criteria applicable to such statements.

Findings and Order of the SEC, page 15.

Plaintiffs allege that as a result of the defendants' conduct, MDC traded at artificially inflated prices of over $22 per share.

Following the disclosures of adverse facts, the price declined to $1 per share.

The principal parties, MDC and its directors and officers, have settled. Three groups of non-settling defendants are before the court:

(1) The "individual Drexel defendants" include four members of the High Yield Bond Department (Michael Milken, Lowell Milken, James Dahl, Bruce Newberg) and 28 individuals from Drexel, including Frederick Joseph, Robert Linton, William Brown, Richard Bruce, Maurits Edersheim, Edwin Kantor, Roger Jospe, Anthony Lamport, David Meadow, Stanley Schiff, Joseph Vitanza, Peter Schild, John Kissick, John Coffin, George Anderson, Haig Casparian, Hercules Segalas, Alexander Chapro, Aaron Eshman, Stephen Weinroth, Andrew Morse, Burton Siegel, David Kay, Herbert Bachelor, Eugene Glaser, Richard Wright, Allan Sher, and Leon Black (hereinafter "Frederick Joseph defendants"). Plaintiffs name these defendants in the counts based on § 10(b), fraud and deceit, and negligent misrepresentation. The complaint accuses Drexel of compelling MDC to issue substantially more debt than it could afford so that Drexel could force MDC to purchase high risk securities issued or marketed by Drexel. Drexel also made allegedly false statements in its research reports about the financial health of MDC. The individual Drexel defendants allegedly caused Drexel to engage in the unlawful conduct.

(2) The "foreign Drexel defendants" include Lambert Brussels Associates Limited Partnership, Pargesa Holding S.A., and Groupe Bruxelles Lambert, S.A. These are parent companies of the American firm of Drexel Burnham Lambert. Plaintiffs name these defendants in the counts based on § 10(b), fraud and deceit, and negligent misrepresentation. Plaintiffs allege that because of their direct or indirect ownership of Drexel, these defendants had the power to control Drexel's unlawful conduct.

(3) Defendant Touche Ross & Co. provided auditing services to MDC and issued unqualified auditor's opinions on MDC's financial statements. Touche is named in

the § 10(b), § 18, fraud and deceit, and negligent misrepresentation claims. Plaintiffs allege that Touche audited the fraudulent financial statements and falsely represented that they were prepared in accordance with generally accepted accounting procedures and auditing standards. Plaintiffs also allege that Touche recklessly disregarded adverse facts about MDC's finances.

On September 17, 1990, the court conducted a hearing on the various motions to dismiss. The following week, on September 24, 1990, the court entertained the plaintiffs' motion for class certification. This decision addresses the motions made at both of those hearings.

## DISCUSSION

### I.

### PERSONAL JURISDICTION OVER THE FOREIGN DREXEL DEFENDANTS

#### A. *Background*

Drexel Burnham Lambert, Inc. ("Drexel") is owned by an American parent corporation, Drexel Burnham Lambert Group ("DBL Group"). DBL Group filed a bankruptcy petition in February 1990, and thus is not named as a defendant in this action. Drexel is named in the complaint, but subsequently filed for bankruptcy.

Plaintiffs also name other Drexel related corporations as defendants: Lambert Brussels Associates Limited Partnership ("LBA"), a Bermuda partnership whose partners are European companies; Groupe Bruxelles Lambert S.A. ("GBL"), a Belgian corporation; and Pargesa Holding S.A. ("Pargesa"), a Swiss corporation. Plaintiffs assert three claims against LBA, GBL, and Pargesa ("foreign Drexel defendants"): Rule 10(b)(5), common law fraud and deceit, and negligent misrepresentation. The foreign Drexel defendants move to dismiss the complaint under Rule 12(b)(1), alleging lack of personal jurisdiction; under Rule 9(b) for failure to plead fraud with the required particularity; under Rule 12(b)(6) for failure to state a claim

on which relief can be granted; and under Rule 12(b)(4) for failure to properly serve Pargesa.

One of the foreign Drexel defendants, Pargesa, submitted a supplemental reply memorandum. The clerk's office refused to file it because it was not timely and the court has not considered it.

At the September 17, 1990 hearing, plaintiffs submitted GBL's 1985 annual report which shows overlapping directors and officers, a merger certificate between Lambert Brussels Real Estate Corporation into Lambert Brussels Financial Corporation, and 1989 Delaware franchise tax reports for several subsidiaries. These materials were obtained pursuant to Magistrate McCue's August 28, 1990 protective order on jurisdictional discovery. The court allowed the foreign Drexel defendants five days in which to respond to the exhibits, and plaintiffs five days thereafter in which to respond. The court has received and considered these responses.

#### B. *Standard*

■ Plaintiffs bear the burden of demonstrating personal jurisdiction. In order to avoid a motion to dismiss, plaintiffs must make a prima facie showing of jurisdiction. *Data Disc. Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). Plaintiffs are "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986). Ultimately, whether at trial or at a preliminary hearing on the issue of jurisdiction, plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *Data Disc*, 557 F.2d at 1285.

In order to exercise jurisdiction over foreign defendants, the court must determine (1) whether a statute or rule authorizes jurisdiction, and (2) whether the exercise of that jurisdiction comports with due process. The first element is not disputed. Section 27 of the Securities Exchange Act potentially confers jurisdiction and provides for nationwide service. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1314–16 (9th Cir.1985). The dispute

centers on the second issue, whether the foreign Drexel defendants have sufficient minimum contacts with the United States, rather than a particular state, to satisfy the due process concerns of the Fifth Amendment. *Id.*

█ Plaintiffs urge the court to exercise general jurisdiction over the defendants, thus the question is whether the non-resident parent carries on continuous and systematic activities in the forum through a subsidiary such that it may be brought into causes of action that are unrelated to its contacts with the forum. *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980). The mere existence of the parent-subsidiary relationship is an insufficient basis on which to acquire personal jurisdiction over the parent. *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir.1985); *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

### C. *Discussion*

█ Plaintiffs argue that the foreign Drexel defendants have engaged in substantial, continuous, and systematic activities in the United States and therefore this court has general jurisdiction over them. LBA owns 26.3% of DBL Group, the parent company of the broker-dealer defendant Drexel. LBA has the right to designate nominees for a minority of the directors of DBL Group and Drexel. In turn, GBL owns 57% of LBA, and Pargesa owns 25% of LBA. The complaint alleges that "because of their direct or indirect ownership of defendant Drexel," the foreign Drexel defendants are control persons. Plaintiffs assert that they have shown day-to-day control of the subsidiaries by the foreign Drexel defendants. This conclusory assertion is not supported by the evidence.

Defendants have provided evidence that they do not have substantial activities in the United States. Defendants provide a declaration by Didier Bellens, Senior Vice President of Pargesa stating that Pargesa does not maintain a place of business, any employees, an interest in any property, a mail box, a telephone listing, or a bank account in the United States. Nor is Pargesa qualified or licensed to do business in the United States. Arnold van Zeeland, Manager of Relations with American Subsidiaries and Special Operations of GBL, submitted a similar declaration about LBA and GBL. Both declarations state that the foreign Drexel defendants did not participate in MDC's public announcements or Drexel's research reports on which plaintiffs base their complaint. Plaintiffs have not provided any facts to refute these declarations.

Plaintiffs' strongest argument is that LBA applied for and received exemptions from regulation by the SEC. In the case cited by plaintiffs, the foreign defendant filed a registration with the SEC in order to trade its stock on American securities markets. *Newport Components Inc. v. NEC Home Electronics, Inc.*, 671 F.Supp. 1525, 1540 (C.D.Cal.1987). Registering with and transacting business under the auspices of the SEC was one factor in determining whether the foreign defendant had purposefully availed itself of the benefits and protections of federal law. *Id.* Defendants attempt to distinguish the case by arguing that obtaining an exemption is the opposite of registering with the SEC. The distinction is not as clear cut as defendants' suggest, however, since obtaining an exemption shows that LBA was concerned with abiding by federal law. Nonetheless, even accepting the plaintiffs' view that this act is relevant, by itself, it does not establish a basis for personal jurisdiction.

█ Plaintiffs also contend that LBA owns 26.7% of DBL Group and has representatives on the board of directors. The foreign Drexel defendants correctly point out, however, that stock ownership and board representation do not provide a basis for exercising personal jurisdiction over them. *Kramer Motors,* 628 F.2d at 1177–78. Even where a parent owns 100% of a subsidiary and their boards of directors overlap, the foreign parent is not subject to jurisdiction absent a showing that the par-

ent "controls the internal affairs of the subsidiary and determines how the company will be operated on a day-to-day basis." *Williams v. Canon, Inc.*, 432 F.Supp. 376, 380 (C.D.Cal.1977).

Plaintiffs also note that the LBA-nominated board members of DBL Group voted to approve the settlement between Drexel and the SEC. However, these votes are the result of board representation and do not constitute the type of day-to-day control needed to establish jurisdiction. *Kramer Motors*, 628 F.2d at 1178 (foreign parent's mere approval of a marketing scheme developed by American subsidiary does not constitute the kind of deliberate forum protection-invoking act which the law requires).

■ Plaintiffs remaining arguments focus on the inter-relationship between the defendants and their various holdings, and the activities of defendants' other American subsidiaries. The other subsidiaries are not defendants in this suit. These relationships do not show continuous or systematic activity by the parent companies. *Id.* Finally, the defendants' contacts with European investors are irrelevant to this motion.

In sum, plaintiffs have not made a prima facie showing of personal jurisdiction over the foreign Drexel defendants. Plaintiff has not presented facts showing that these defendants have the requisite minimum contacts with the United States or that they in fact control the subsidiaries' activities. Therefore, the court hereby grants the foreign Drexel defendants' motion to dismiss for lack of personal jurisdiction. The dismissal is without prejudice, so that if plaintiffs uncover facts showing a prima facie case of jurisdiction, they can seek leave to amend the complaint to add these defendants.

In light of the dismissal, there is no need to reach the foreign Drexel defendants' other arguments based on Rule 9(b), failure to state a claim, and ineffective service of process.

## II.

## RULE 9(B) PARTICULARITY REQUIREMENT FOR FRAUD ALLEGATIONS

The individual Drexel and Touche defendants move to dismiss the complaint on various grounds. Each makes substantially the same argument. They argue that plaintiffs have failed to state any claim on which relief could be granted and have failed to plead fraud with the specificity required by Rule 9(b).

The court grants the timely motions made by several defendants to join the motions to dismiss by co-defendants. Frederick Joseph's papers are joined by Gary Winnick, Joseph Murphy, James Dahl, Issac Burnham, II, Michael Gellert, and Sylvan Schefler; Lowell Milken's papers are joined by Gary Winnick and James Dahl; Michael Milken's papers are joined by Gary Winnick.

### A. *Individual Drexel Defendants*

■ The complaint contains three fraud based claims to which Rule 9(b) applies: count one for § 10(b), count two for § 18, and count four for fraud and deceit. Rule 9(b) requires particularity in pleading the circumstances of fraud. Fed.R.Civ.P. 9(b). *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987). The complaint must identify the circumstances of fraud such that the defendant can prepare an adequate answer from the allegations. *Id.* While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are not. *Id.*

■ In *Wool*, the Ninth Circuit relaxed the Rule 9(b) standard for suits involving corporate fraud. "In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *Id.* at 1440. In such cases, Rule 9(b) can be met by pleading the misrepresentations with particularity and, if possible, the roles of the individual defendants

in the misrepresentations. *Id.* This relaxed rule applies when the individual defendants are a "narrowly defined group of officers" who had direct involvement in the corporation's day-to-day affairs and in the financial statements in particular. *Id.* The rule also applies to the board of directors. *Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988).

Plaintiffs argue that the relaxed *Wool* standard should be extended to apply to the individual Drexel defendants. Plaintiffs ask the court to apply *Wool* to "any identifiable group that appears, based on some factual circumstance, to have had a role in disseminating the misleading information at issue."

At the outset, it is important to note the two types of misleading publications at issue. The complaint seeks to hold the Drexel individuals collectively responsible for two categories of misrepresentations: (1) a variety of allegedly misleading documents issued by MDC and (2) the allegedly false research reports published by Drexel.

As to the first category, the misleading documents by MDC, the *Wool* standard does not apply. Plaintiffs' proposed reading of *Wool* is too broad. Drexel was the underwriter for MDC. The position held by these parties in relation to MDC is not analogous to that held by the officers or directors of MDC. That is, they did not have direct involvement in MDC's day-to-day affairs or its publications. The Ninth Circuit refused to extend the relaxed *Wool* standard a situation where plaintiff attempted to hold corporate outsiders (accountants, stockbrokers, and attorneys) responsible for the corporation's statements. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989). Courts have refused to extend the *Wool* standard to individuals aside from the officers or directors without a showing of "a special relationship between the individual(s) and the corporation in question warranting such treatment." *Klein v. King,* [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,501, at 93,195, 1989 WL 225027 (N.D. Cal.1989), *later proceeding,* 1990 WL 61950, 1990 U.S. Dist. LEXIS 5392, at 35–

37. Plaintiffs have not alleged a special relationship between MDC and Drexel. Accordingly, the group pleading on this category of statements is improper. Plaintiff cannot make blanket references, but must inform each defendant of the conduct which constitutes the alleged violation. *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1443 (S.D.Cal.1988). The fact that plaintiffs are not entitled to the *Wool* presumption of collective responsibility taints every aspect of the complaint that attempts to hold the individual Drexel defendants liable for statements by MDC.

As to the second category of statements, false research reports published by Drexel, *Wool* does apply. In this case, plaintiffs allege that Drexel made misstatements about the financial health of MDC in research reports originated by Drexel. (Complaint ¶ 67, 77, 83). To the extent that plaintiffs seek to hold individual Drexel officers and directors liable for the published documents of Drexel, rather than MDC, the complaint is sufficient if it identifies the misrepresentations with particularity and, where possible, identifies the roles of the individual defendants in the misrepresentations. *Wool,* 818 F.2d at 1440.

The complaint here adequately identifies the specific misstatements produced by Drexel. (Complaint ¶ 67, 77, 83). It identifies the facts allegedly known by the defendants and explains why the statements were false. (Complaint ¶ 56, 108–10). However, the complaint does not identify the roles of the individual defendants in the misrepresentations. Rather, the complaint conclusively states that the named defendants were officers and directors of Drexel. (Complaint ¶ 32). It does not allege what positions these defendants held, or in what respect they were involved in preparing the allegedly false reports about MDC. Plaintiffs must give some detail demonstrating collective responsibility before they are entitled to benefit from the *Wool* presumption. *In re Genentech Securities Litigation,* [1989 Transfer Binder] (CCH) Fed.Sec.L.Rep. ¶ 94,544 at 93,482, 1989 WL 106834 (N.D. Cal.1989) ("plaintiffs have failed to plead

the direct involvement necessary to raise an inference of collective responsibility).

The importance of a factual basis showing direct involvement by each defendant is illustrated by the errors in this complaint. For instance, the complaint alleges that Lowell Milken was an officer or director of Drexel. (Complaint ¶ 32). Lowell Milken's attorney submitted a declaration that in fact Lowell was never a director or officer. Bruce Newberg is in a similar situation. Thus, plaintiffs' pleading technique has led to some inaccuracies, inaccuracies that could be prevented by identifying the roles of these individuals. *See also* Fed.R.Civ.P. 11 (signed pleadings certify that to the best of the signer's knowledge, information, and belief, *after reasonable inquiry*, the pleading is well grounded in fact) (emphasis added).

Similarly, the complaint fails to differentiate between primary and secondary liability. Plaintiffs must allege facts such that each defendant can distinguish his potential primary liability from his potential secondary liability. *Lubin,* 688 F.Supp. at 1443.

Accordingly, the court grants the motion to dismiss the fraud based claims, count one § 10(b) and count four fraud and deceit, against the individual Drexel defendants.

### B. *Touche Ross*

■ Touche provided independent auditing services for MDC and issued opinions on MDC's financial statements for fiscal years 1984 to 1987. Plaintiffs allege that Touche knew or recklessly disregarded adverse facts about MDC's finances. (Complaint ¶ 119). Plaintiffs also allege that Touche knew that MDC's annual reports and quarterly financial statements were presented in a manner that violated generally accepted accounting procedures. (Complaint ¶ 121).

Touche argues that the complaint does not satisfy Rule 9(b)'s particularity requirement because the allegations could be made with respect to virtually any audit by any accounting firm of any set of financial statements that are claimed to be false.

The court disagrees and finds that the complaint meets the particularity requirement as to Touche and the misrepresentations involved in the accounting. The complaint identifies the allegedly false reports and details why each of the statements made were misleading, for example, by overstating the value of MDC's investments. (Complaint ¶ 57-59, 69, 103, 108-110, 118, 120). It also describes Touche's role in preparing the statements. The complaint notes that Touche had access to MDC's financial and business information, but recklessly disregarded facts which indicated that Touche should have qualified its opinions on MDC's financial statements. (Complaint ¶ 108, 109, 118, 121). Therefore, Rule 9(b) does not provide a basis for dismissing the fraud based claims against Touche.

### III.

### MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Several defendants have made various motions to dismiss the claims against them for failure to state a claim. Fed.R.Civ.P. 12(b)(6). The individual Drexel defendants challenge the § 10(b) claims; Lowell Milken, Michael Milken, Gary Winnick, and James Dahl challenge the negligent misrepresentation claim; and Touche challenges the § 18 claim. In ruling upon a motion to dismiss, a court must accept all material allegations in the complaint as true and must construe the complaint in a light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

### A. *Count One § 10(b)*

#### 1. Aiding and Abetting

■ As noted in the Rule 9(b) discussion, the complaint is silent on the conduct of the individual Drexel defendants. Consequently, plaintiffs have not adequately plead a claim of aiding and abetting under § 10(b). To state a claim for aiding and abetting a § 10(b) violation, the complaint must adequately allege the existence of a primary wrong; actual knowledge of the

primary violation by the alleged aider and abettor and of her role in furthering it; and substantial assistance in the primary violation. *Orloff v. Allman*, 819 F.2d 904, 907 (9th Cir.1987).

As to the individual Drexel defendants, the complaint does not adequately allege either knowledge or substantial assistance. The involvement and responsibilities of these defendants is not mentioned in the complaint aside from conclusory statements that track the statutory language. (Complaint ¶ 128). There are no facts supporting a reasonable inference that these defendants knew of the alleged fraud and their role in furthering it. *In re Genentech*, Fed.Sec.L.Rep. at 93,483. Most of these defendants are only named once in the paragraphs that describe them as officers and directors of Drexel. (Complaint ¶ 32). This single reference based solely on their status is insufficient.

### 2. Conspiracy

To allege a conspiracy to violate § 10(b), a plaintiff must plead an agreement to participate in an unlawful act and injury caused by an overt act in furtherance of the alleged agreement. *Id.*

Plaintiffs use conclusory statements without facts to support the allegation of an agreement to participate in any unlawful acts. (Complaint ¶ 35). The complaint does not support a conspiracy theory of liability against the individual Drexel defendants.

### 3. Control Person

To establish that a defendant is a controlling person under § 20 of the 1934 Act, a plaintiff must show that the defendant had actual power or influence over the controlled person and that the defendant was a culpable participant in the illegal activity. *Buhler v. Audio Leasing Corp.*, 807 F.2d 833, 835 (9th Cir.1987). When the defendants, as corporate officers or directors, are "a narrowly defined group charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transac-

tions giving rise to the securities violations." *Wool*, 818 F.2d at 1441. If the *Wool* standard applies, plaintiff must inform the "individual defendants 'who they are alleged to control and what acts or status indicate such control.'" *Id.* (quoting *Hudson v. Capital Management International, Inc.*, [1982–1983 Binder] Fed.Sec. L.Rep. (CCH) ¶ 99,222, at 95,905, 1982 WL 1385 (N.D.Cal.1982)).

As noted, the *Wool* standard applies to the directors and officers of Drexel with regard to activities by Drexel, that is the allegedly false research reports published by Drexel about MDC. Here, the complaint is silent on the role, status, or duties of the individual Drexel defendants. Plaintiff has not shown that these parties had any actual participation in the corporation's operation. Nor does the complaint inform these parties who they are alleged to have controlled. Plaintiffs' blanket allegation that these parties were senior directors and officers of Drexel does not satisfy the relaxed *Wool* standard.

Despite defendants' arguments, the complaint does satisfy the culpable participation element of the control person test. Under *Wool*, when the alleged misrepresentations is conveyed in group published information, "it is reasonable to presume that these are the collective actions of the corporate officers." *Id.* at 1442.

### B. *Count Five Negligent Misrepresentation*

Defendants Lowell Milken, Michael Milken, Gary Winnick, James Dahl, and Bruce Newberg argue that the claim for negligent misrepresentation should be dismissed. They argue that the complaint does not identify any false statement by them and does not allege any facts demonstrating a duty to plaintiffs to avoid such misrepresentations.

In response, plaintiffs argue that these defendants owed a duty to plaintiffs because it was foreseeable that their activity would cause harm to the plaintiffs.

As noted, the complaint specifies the misrepresentations by Drexel about MDC but

fails to identify the roles of the individual Drexel defendants in the misrepresentations. The court, therefore, dismisses count five for negligent misrepresentation against the moving defendants. Plaintiffs must identify conduct by the individual defendants in disseminating and preparing the allegedly false research reports. Otherwise, the threshold requirement of a duty to disclose has not been met. *Jett v. Sunderman*, 840 F.2d 1487, 1493 (9th Cir.1988).

## C. Count Two § 18 of the Securities Exchange Act of 1934

■ In count two, plaintiffs assert a § 18 claim against Touche and the officers and directors of MDC. Section 18 of the Securities Exchange Act of 1934 provides a remedy for false or misleading statements in a document filed with the SEC. 15 U.S.C. § 78r. The person making the statement is liable "to any person ... who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement." *Id.* Plaintiffs allege that Touche assisted MDC in filing several documents with the SEC that contained false statements of material fact.

Touche argues that plaintiffs have failed to state a claim upon which relief can be granted under § 18 because plaintiffs do not allege actual, individual reliance on the allegedly false and misleading documents filed with the SEC. In response, plaintiffs rely on the fraud-on-the-market presumption of reliance enunciated in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988). In *Basic*, the Supreme Court held that a plaintiff in a § 10(b) claim did not need to prove direct reliance on a misrepresentation. Rather, the § 10(b) plaintiff could satisfy the reliance requirement indirectly. That is, by invoking a presumption that the investor relied on the integrity of the market in valuing the stock. Plaintiffs argue that if § 18 is to become an effective remedy, the reliance presumption created for § 10(b) claims should be applied to § 18 claims.

The court rejects plaintiffs' argument. Because the implied right of action under § 10(b) was a judicial creation, the Court was free to redefine the reliance requirement in *Basic* in order to give effect to the policies behind the remedy. In contrast, Congress created the express reliance requirement in § 18. Courts have consistently interpreted the section to require actual reliance. *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 552–53 (2d Cir.1979) (contrasts presumption of reliance from *Affiliated Ute* and *Blackie v. Barrak*, 524 F.2d 891 (9th Cir.1975) for § 10(b) claims with the "eyeball" reliance requirement of § 18), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Beebe v. Pacific Realty Trust*, 578 F.Supp. 1128, 1151–52 (D.Ore.1984); *In re Genentech*, Fed.Sec.L. Rep. at 93,480–81. Moreover, the legislative history reveals that Congress rejected an analogous fraud-on-the-market theory in § 18 and adopted a strict reliance requirement instead. *See Basic*, 108 S.Ct. at 997 (White, J., dissenting) (detailing legislative history); Black, *Fraud on the Market: A Criticism of Dispensing with Reliance Requirements in Certain Open Market Transactions*, 62 N.C.L.R. 435, 462–68 & n. 191 (1984) (same).

Accordingly, in order to state a § 18 claim, a plaintiff must show that she purchased or sold a security in reliance on the alleged misstatement. Plaintiff must allege that she actually read a copy of the filed document. *In re Genentech*, Fed.Sec. L.Rep. at 93,480. The allegations in plaintiffs' § 18 claim do not meet this requirement and it is hereby dismissed without prejudice.

## D. Motion to Dismiss Pendent Claims

Touche asks the court to dismiss the pendent state claims since plaintiffs have not adequately pled any federal claims. Since the court has found that some of plaintiffs' federal claims survive, the court denies the motion to dismiss the state claims.

## IV.

## MOTION TO STRIKE INTEGRITY OF THE MARKET REFERENCES IN FRAUD AND DECEIT CLAIM

■ In plaintiffs' claim for common law fraud and deceit, they allege that they pur-

chased MDC securities in reliance on the misrepresentations, the integrity of the market, and the securities offering process, and the superior knowledge of the defendants. (Complaint ¶ 147). These allegations are incorporated into the negligent misrepresentation claim as well. (Complaint ¶ 125). "Integrity of the market" refers to the rebuttable presumption of reliance created in certain securities fraud cases supported by the fraud on the market theory. *Basic*, 108 S.Ct. at 989–90.

■ Touche argues that plaintiffs' reference to the integrity of the market in the common law fraud and deceit claim should be stricken as immaterial. Fed.R.Civ.P. 12(f). Touche argues that actual reliance is required in the common law claim and that the rebuttable presumption applies in § 10(b) cases does not replace this requirement in the fraud and deceit claim.

The federal authorities are split on this issue. *Compare In re ZZZZ Best Securities Litigation*, [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,485 at 93,087, 1989 WL 90284 (C.D.Cal.1989) (plaintiffs entitled to plead reliance on the integrity of the market in place of actual reliance) *and In re Activision Securities Litigation*, 621 F.Supp. 415, 430–31 (N.D.Cal.1985) (proof needed to show reliance in fraud, deceit, and negligent misrepresentation claims is similar to that needed under Rule 10b–5 claims) (citing *Vasquez v. Superior Court*, 4 Cal.3d 800, 814–15, 94 Cal.Rptr. 796, 484 P.2d 964 (1971)) *and In re Seagate Technologies Securities Litigation*, 115 F.R.D. 264, 270–71 (N.D.Cal.1987) (certification of pendent state law fraud claims appropriate) *and In re Victor Technologies Securities Litigation*, 102 F.R.D. 53, 59 (N.D.Cal. 1984) (same), *aff'd* 792 F.2d 862 (9th Cir. 1986) *with In re 3Com Securities Litigation*, 1990 WL 86875 1990 U.S.Dist. Lexis 10678 at 17 (N.D.Cal.1990) (presumption of reliance does not apply to common law fraud) *and In re Consolidated Capital Securities Litigation*, 1990 WL 82383 1990 U.S. Dist. Lexis 10492 at 45–49 (N.D.Cal. 1990) (same) *and Victor v. White*, 1989 WL 159582 1989 U.S. Dist. Lexis 12852 at 19–20 (N.D.Cal.1989) (same) *and Hudson v. Capi-*

*tal Management International, Inc.*, 565 F.Supp. 615, 628, 630 (N.D.Cal.1983) (individual reliance must be pled to state a common law claims for negligent misrepresentation and fraud).

No state court in California has specifically adopted the fraud on the market theory. It is not surprising that the California courts have not dealt with this issue since the *Blackie* decision in 1975. Most securities cases are brought in federal court under the federal securities laws with the parallel state claims retained as pendent claims, thereby circumventing the state forum.

Nonetheless, in a decision pre-dating *Blackie*, the California Supreme Court indicated a willingness to relax the reliance requirement in a consumer fraud class action suit. *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1971). The presumption created in *Vasquez* is similar to that created by the federal courts a few years later in *Blackie* and *Basic*. Under *Vasquez* a rebuttable presumption of reliance will arise as to an entire class, if the court finds that defendants made material misrepresentations to the class members and plaintiffs took action consistent with the misrepresentation. *Id.* at 814; *see also Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 219, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) (parents, who never heard or relied on defendants' statements, may state a claim against cereal manufacturers for fraudulent statements that were directed exclusively to their children); *Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355, 363, 134 Cal.Rptr. 388, 556 P.2d 750 (1976) (based on *Vasquez*, "justifiable reliance may be established on a common basis."). The Court noted that "it is not necessary to show reliance upon false representations by direct evidence." *Vasquez*, 4 Cal.3d at 814, 94 Cal.Rptr. 796, 484 P.2d 964. Rather, the court can presume that the representation was relied upon "[w]here representations have been made in regard to a material matter and action has been taken." *Id.* Thus *Vasquez* parallels the relaxed requirements of reliance in *Blackie* where it was held that

if the representation was material, and the investor acted on the market price by buying or selling the securities, then reliance will be presumed. *See Zatkin v. Primuth,* 551 F.Supp. 39, 46 (S.D.Cal.1982) (relying on *Vasquez*); *In re ZZZZ Best Securities Litigation,* [1989 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 94,485 at 93,087 (C.D.Cal. 1989) (relying on *Zatkin* and *Vasquez* to hold that fraud-on-the-market applies to common law fraud claims).

Moreover, in allowing plaintiffs to presume reliance, the Court in *Vasquez* specifically relied on federal class actions cases involving stockholders who relied on material misrepresentations in publicly disseminated materials. *Id.* at 815, 94 Cal.Rptr. 796, 484 P.2d 964 (citing *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968); *Dolgow v. Anderson,* 43 F.R.D. 472, 491 (E.D. N.Y.1968) (suggesting that plaintiffs may not need to prove individual reliance)). These citations demonstrate the similarity between the presumption of reliance in *Blackie, Basic,* and *Vasquez.* Each relaxes the proof required for the reliance element in order to facilitate the use of the class action device.

In light of these authorities, the court denies Touche's motion to strike.

## V.

## INDIVIDUAL DREXEL DEFENDANTS' MOTION FOR BIFURCATION AND STAY

■ In the event that the court finds that plaintiffs have sufficiently pleaded a claim against the individual Drexel defendants, they seek an order bifurcating and staying the claims against them, until after the determination of liability of the principal defendants (the Drexel corporations). Fed.R.Civ.P. 42(b). Defendants argue that the bifurcation and stay would promote judicial economy and avoid burdensome litigation because if the jury does not find other defendants primarily liable, then the individual Drexel defendants could not be found secondarily liable.

Plaintiffs oppose the motion. They argue that the claims against the defendants

are interrelated and that separate trials would be duplicative. Plaintiffs' position is persuasive. The court denies the motion for bifurcation and stay. It will be more efficient to try the claims against all the defendants together since the same facts and issues are involved.

## VI.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

On September 24, 1990, plaintiffs moved to certify the class pursuant to Rule 23(b). The proposed class includes all persons who purchased securities of MDC Holdings, Inc. from April 1, 1985 through April 6, 1989. "Securities" includes MDC's common stock; 7% subordinated notes due April 1993; subordinated exchangeable variable rate notes due July 1994; 10½% subordinated notes due April 1995; common stock purchase warrants; and 11¼% senior subordinated notes due May 1996. Touche opposes the motion. Gary Winnick, James Dahl, Michael Milken, Joseph Murphy, and the Frederick Joseph defendants joined Touche's opposition.

### A. *Applicable Law*

■ Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. Plaintiffs bear the burden of demonstrating that all of Rule 23's prerequisites are satisfied. *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308 (9th Cir.1977). For purposes of determining class certification, the allegations in the complaint are taken as true. *Blackie,* 524 F.2d 891, 900 n. 17.

Rule 23(a) sets forth the four general criteria for certification of a class:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative

parties will fairly and adequately protect the interests of the class.

Once plaintiffs satisfy Rule 23(a)'s prerequisites, the court must also find that the action satisfies one of the three conditions of subdivision (b) of Rule 23. Here, plaintiffs rely on subdivision (3). Rule 23(b)(3) provides that the court must find that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

■■■ Throughout the trial, the district court retains the authority to amend the certification order as may be appropriate as the case develops. *Basic*, 108 S.Ct. at 992 n. 29; Fed.R.Civ.P. 23(c)(1) (A class certification order "may be altered or amended before the decision on the merits.").

### B. *Rule 23(a) Requirements*
#### 1. Numerosity

■■■ The first element of Rule 23(a) examines whether the members of the class are so numerous that joinder of all class members is impracticable. Here, approximately 20 million shares of MDC common stock were issued and outstanding at the beginning of the class period. Plaintiffs do not have the precise number of class members, but believe that it will be in the thousands. Touche does not dispute the fact that joinder would be impracticable. The court finds that the membership of the proposed plaintiff class is sufficiently large to make joinder impracticable.

#### 2. Common Questions of Law or Fact

■■■ In order to proceed with a class action suit, the class members must have questions of law or fact in common. Class actions are particularly effective and suitable in the securities fraud context. *Blackie*, 524 F.2d at 903. It is sufficient to allege a "common course of conduct." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964).

Here, the existence, nature, and significance of material omissions and misrepresentations are issues common to all class members. The claims against defendants arise out of the same set of facts and are based on common legal theories. *See Blackie*, 524 F.2d at 902–05. Further, the court finds that the complaint satisfies the "common course of conduct" theory enunciated in *Harris*.

Touche does not challenge the certification on this ground, and the court finds that the commonality requirement is satisfied.

#### 3. Typicality

Under this requirement, the named class members must present claims that are typical of the class. Typicality ensures that the nature of claims brought by the class representatives is similar to the claims of the unnamed class members. A class representative with typical claims can simultaneously pursue her own interests and the interests of the class members. *In re United Energy Corp. Securities Litigation*, 122 F.R.D. 251, 255 (C.D.Cal.1988).

Touche raises several arguments concerning the class representatives. The arguments touch on both the third and fourth requirements of Rule 23(a). Even though the typicality and adequacy of representation requirements are separate, the concerns addressed by these requirements overlap a great deal. That is, to the extent that the named representatives have atypical claims, they would not vigorously protect the interests of the class members as required by the fair and adequate representation prong of Rule 23(a). The court finds that the named plaintiffs have typical claims, and that they will fairly and adequately protect the interests of the class.

##### a. *Dates of Purchase*

■■■ Touche argues that Boyle is not an appropriate representative because his suit is subject to a unique defense. Boyle purchased his senior subordinated notes on October 5, 1988. Touche argues this is four months after MDC began to reveal adverse information about the company. Boyle was aware of this information. Touche argues that this information rebuts the presumption of reliance as to Boyle.

The court is not persuaded by Touche's unique defense argument. *See* Comment, *Class Actions, Typicality, and Rule 10b5*, 36 Emory L.J. 649, 670 (1987) (suggesting that the unique defense test is clearly erroneous when used against a representative to defeat certification of a plaintiff's class under the typicality requirement because Rule 23 should be read to require a plaintiff's class to have typical claims, and a defendant's class to have typical defenses). In addition, Touche's argument goes to whether the disclosures between May 1988 and November 1988 cured the prior misrepresentations. If a truthful disclosure cures the prior misrepresentations, the causal connection between the defendant's conduct and the plaintiff's injury is broken. Determining this issue involves questions of fact that are not appropriately resolved in the certification motion. *In re United Energy*, 122 F.R.D. at 255; *In re Unioil Securities Litigation*, 107 F.R.D. 615, 620–21 (C.D.Cal.1985). Issues of non-reliance go to the merits of the case and are not a basis for denying class certification. *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 695 (9th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). *See also* Black, *supra*, at 449 & n. 89 (alleged instances of nonreliance by certain plaintiffs is not grounds for denying class certification).

### b. *Method of Purchase*

■ Touche next argues that Masry's and Gordon's claims are atypical since each is subject to the defense that they did not rely on the integrity of the market in making their purchases. Masry relied on her son, who was also her broker, and Gordon relied on his broker. Touche argues that neither Masry nor Gordon will be an adequate class representative as a result.

This argument relates to the merits of the claim in that defendants are attempting to rebut the claim of reliance. It is not a basis for denying class certification. *Schneider v. Traweek*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,419, at 97,112, 1990 WL 132716 (C.D.Cal.1990). In addition, defendants have not cited authority for the proposition that a plaintiff's indirect reliance (an investor who relies on the advice of a broker who in turn relied on the market) is outside the scope of the fraud on the market presumption of reliance.

### c. *Sophisticated Investors*

■ Touche argues that Markleebeth, Inc. and Boyle are sophisticated investors whose claims are atypical of the class, making them subject to unique defenses. Markleebeth's business is investing in securities and it has been a plaintiff in four other securities class actions. Boyle is a former stockbroker and had approximately $250,000 invested in securities.

The Ninth Circuit has determined that differences in investor sophistication do not prevent class certification. In *Blackie*, 524 F.2d at 905, the court analyzed the argument under the common questions of law or fact prong of Rule 23(a) and determined that "[d]ifferences in sophistication among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each investor identically." *See also Michaels v. Ambassador Group, Inc.*, 110 F.R.D. 84, 89 (E.D. N.Y.1986) ("If the defendants perpetrated a fraud-on-the-market, then even the most sophisticated investor would be deceived.").

### 4. Fair and Adequate Representation

■ The fourth prong of Rule 23(a) evaluates whether the named plaintiffs will fairly and adequately protect the interests of the class. This requirement has two aspects. First, the named representative must be able to prosecute the action vigorously through qualified counsel. Courts have focused on whether counsel for the class is competent to handle the litigation. Second, the court must ensure that the class representatives do not have conflicting interests with the unnamed class members.

The first aspect is met. Counsel has participated in several sophisticated securities class actions, and the defendants have not alleged any incompetence. Touche does raise arguments, however, concerning

the second aspect of this prong. Touche contends that the named plaintiffs are unsuitable class representatives because they are inadequate representatives. The arguments are not convincing.

▇▇ Touche challenges plaintiffs Masry, Gordon, Hollander, and Boyle on the ground that they have relinquished control of the litigation to their counsel. A class representative cannot blindly rely on counsel, such that she lacks familiarity with the critical aspects of the suit. *In re Goldchip Funding Co.*, 61 F.R.D. 592, 594–95 (M.D. Pa.1974); *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1213–14 (D.Minn. 1987).

The facts do not support Touche's contention the class representatives have abdicated control of the action to the attorneys. The plaintiffs in a complex securities case such as this one cannot be expected to be intimately familiar with every factual and legal issue in the case. *In re Worlds of WonderSecurities Litigation*, [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,004, at 95,627, 1990 WL 61951 (N.D. Cal.1990). Here, plaintiffs have sufficient familiarity with the action to serve as class representatives. (*See, e.g.*, Masry Deposition at 29, 42–46, 68; Gordon Deposition at 29–30, 33, 40, 46; Hollander Deposition at 47, 51–52, 57–58, 72–75, 91–92, 104–05; Boyle Deposition at 138, 143–44).

Thus, plaintiffs have satisfied the four prerequisites for class certification.

## C. *Rule 23(b) Requirements*

In addition to the numerosity, commonality, typicality, and representativeness requirements of Rule 23(a), the proposed class must satisfy the predominance and superiority requirements of Rule 23(b). Specifically plaintiffs must establish that (1) "questions of law or fact common to all members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re U.S. Financial Securities Litigation*, 69 F.R.D. 24, 38 (S.D.Cal.1975).

## 1. State Common Law Claims for Fraud and Negligent Misrepresentation

### a. *Reliance*

As in its motion to dismiss, Touche argues that actual reliance is required to state a claim for the common law claims of fraud and deceit and negligent misrepresentation. Assuming that it is required, Touche argues that class certification is not appropriate for the state claims, since individual issues concerning reliance would overwhelm the common issues.

The court, as noted above, rejected Touche's argument that the plaintiffs' state common law claims require actual reliance. California case law supports a finding that the fraud on the market presumption of reliance applies to these claims. Consequently, Touche's argument is unavailing.

### b. *Choice of Law*

▇▇ In addition, Touche argues that choice of law problems make these state law claims unmanageable. According to Touche, the court would need to canvas the law of every state in which a purchase of MDC securities was made to determine the necessary elements and applicable standards.

California choice of law rules govern the question of which law applies to pendent securities claims. *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). California applies the governmental interest approach to choice of law questions. *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533, 534 (9th Cir.1985). Defendant bears the burden of showing that (1) a true conflict exists; (2) each state has an interest in applying its own law; and (3) if each state such an interest, which state's interest would be more impaired should its law not be applied. *Harmsen*, 693 F.2d at 946–47.

Here, Touche has not made any attempt to satisfy the three-part governmental interest test. Absent such a showing, Touche's argument is premature and does not prevent class certification. *In re Worlds of Wonder Securities Litigation*, 1990 U.S. Dist. LEXIS 8511 (N.D.Cal.1990);

*Roberts v. Heim,* 670 F.Supp. 1466, 1493–94 (N.D.Cal.1987), *modified on other grounds,* 857 F.2d 646 (9th Cir.1988); *In re Seagate Technologies Securities Litigation,* 115 F.R.D. 264, 269 (N.D.Cal.1987); *In re Activision Securities Litigation,* 621 F.Supp. 415, 430–31 (N.D.Cal.1985); *Weinberger v. Jackson,* 102 F.R.D. 839, 847 (N.D.Cal.1984). Thus, the court presumes that California law controls unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment.

### 2. Section 10(b) Claims

Touche opposes the certification of a class of subordinated noteholders on the ground that individual issues will overwhelm the common issues. Touche does not challenge the certification of a class of common stockholders. Thus, the following arguments relate only to the following subordinated notes: 7% subordinated notes due April 1993; subordinated exchangeable variable rate notes due July 1994; 10½ subordinated notes due April 1995; and 11¼% senior subordinated notes due May 1996. The dispute centers on the reliance element. Specifically, whether each plaintiff will be required to prove actual reliance on the misrepresentations; and if yes, whether this would preclude class certification because questions of fact and law affecting individual class members would predominate over questions common to all members.

#### a. *Efficient Market*

▮ First, Touche argues that the proposed class of MDC subordinated noteholders is not entitled to the fraud on the market presumption of reliance for the § 10(b) claim. In *Basic,* 108 S.Ct. at 990, the Supreme Court held that a rebuttable presumption of reliance applies where securities were traded on an open and developed market. Touche argues that the complaint does not adequately allege the existence of an open, efficient, developed market for the subordinated notes. Espousing a list of factors from a New Jersey District Court opinion, Touche argues that plaintiffs have not alleged that an active trading market existed for the notes, the number of securities analysts reporting on the notes, the number of market makers, or how the note prices responded to unexpected corporate events. *Cammer v. Bloom,* 711 F.Supp. 1264, 1286–87 (D.N.J. 1989).

This court has previously noted that the fraud on the market presumption of reliance is not available where the securities were offered in more or less private dealings. *Lubin,* 688 F.Supp. at 1445. Consequently, court agrees with Touche that the *Basic* presumption is available only when the securities have been traded on a free, efficient, and developed market.

The Ninth Circuit has not addressed this particular issue nor set forth pleading requirements for the fraud on the market presumption of reliance. Numerous commentators have argued that the fraud on the market presumption should not apply unless the market was efficient and open. Black, *supra,* at 468–72; Comment, *The Fraud on the Market Theory: A Contrarian View,* 38 Emory L.J. 1269, 1311–18 (1989). These commentators have advanced criteria similar to those adopted by the court in *Cammer. Id.*

▮ In the absence of Ninth Circuit authority, the court finds that the *Cammer* criteria are helpful in determining whether the market is efficient. Touche's argument does raise a significant problem, however. At trial, plaintiffs will have the burden of proving that the market was efficient. And to a certain extent, the issue involves a question on the merits which can be more appropriately examined at trial. *Basic,* 108 S.Ct. at 992 n. 29 (resolving the issue of whether the market was efficient is a matter for trial). Nonetheless, at this time the court must determine whether a class of noteholders should be certified. That determination depends on whether the noteholders benefit from the presumption of reliance, since the complaint does not allege individual reliance. In addition, the court determines whether the presumption of reliance, as a rule of evidence, is available as a substitute for actual reliance. *Id.* at 989, 992 n. 27. Accordingly, the court

must walk a fine line between examining the complaint for facts and allegations that demonstrate that the class can benefit from the presumption without treading too deeply into the ultimate factual question of whether the market was efficient. *See Cammer*, 711 F.Supp at 1287–93. Upon examination of the allegations in the complaint, the court finds that plaintiffs' complaint is not sufficient.

Plaintiffs' complaint alleges in fairly conclusory terms that the misrepresentations operated to "artificially inflate" the value of MDC securities. (Complaint ¶ 94, 97). The complaint further alleges that the market price of MDC securities reacted as adverse information about MDC was released. (Complaint ¶ 114, 133). These are the only references to the nature of the market for the bonds in the complaint.

Aside from the allegations in the complaint, the parties point to evidence obtained during discovery. An expert for plaintiffs asserts that the fact that the price of MDC notes fell in response to the disclosure of negative information indicates that the market in the notes was efficient. (John Torkelsen Declaration, ¶¶ 2, 5–8). Plaintiffs were able to obtain price quotes on the notes by contacting their brokers. (Boyle Deposition at 103; Hollander Deposition at 98).

The notes were traded over the counter. (Boyle Deposition at 103–104; Hollander Deposition at 98). Some courts have found that the over the counter market is not a developed market per se. But the better view is to examine "the trading characteristics of the individual stock itself." *Cammer*, 711 F.Supp. at 1281, 1287.

The court finds that the plaintiffs have not pleaded facts sufficient to invoke the *Basic* presumption of reliance. In the complaint's four references to the market for the notes, there are no facts concerning the activity of the notes, the number of securities analysts reporting on the notes, or the number of market makers (though Touche asserts that Drexel was the only maker). The complaint does allege that "MDC securities" responded to the disclosure of adverse information. MDC securities refers

to both the notes and the common stock. The common stock is in a different position, however, because it was traded on the New York Stock Exchange. Given the record on the notes, the court finds that this conclusory, generic reference to the market for "MDC securities" is not sufficient to invoke the fraud on the market presumption of reliance as to the notes. Since some discovery has taken place, it should not be an insurmountable burden for plaintiffs to set forth facts indicating that the fraud on the market presumption of reliance applies to these subordinated notes.

b. *New Issues*

■ Second, Touche argues that the fraud on the market theory should not apply to new issues of securities in undeveloped markets. Touche asserts that no market existed for MDC's subordinated notes at the time they were issued, therefore, plaintiffs can not benefit from the presumption of reliance.

In response, plaintiffs rely on the theory that the defendants' fraud "created the market." This theory developed in the Fifth Circuit. It extends the fraud on the market theory by applying the presumption to new securities. *See Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). "When the fraud alleged is so pervasive that absent the fraud the bonds could not have been marketed, the reliance element is established by the buyer's reliance on the integrity of the market, *i.e.*, the action of the market to furnish only securities that are entitled to be marketed." *Ross v. Bank South, N.A.*, 885 F.2d 723, 729 (11th Cir.1989) (en banc), *cert. denied*, —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). "[T]he fraud must be so pervasive that it goes to the very existence of the bonds and the validity of their presence on the market." *Id.*

This theory is an extension of the presumption of reliance from an existing, developed, efficient market. It has not been adopted by the Ninth Circuit and it has been criticized by courts and commentators. *Peil v. Speiser*, 806 F.2d 1154, 1160–

61 (3d Cir.1986) (questioning whether the fraud on the market presumption could be applied to offerings of newly issued stock); Black, *supra*, at 452; Note, *Fraud on the Market Theory after Basic Inc. v. Levinson*, 74 Cornell L.R. 964, 982–99 (1989). By definition, an initial public offering of a new security does not involve an efficient, well-developed market because there is no market. The presumption of reliance is based on the assumption of a well-developed market. *Basic*, 108 S.Ct. at 989. The price of new securities is set by the issuers, *i.e.*, the corporation, the underwriters, and the bankers, not the market. This court is not inclined to adopt *Shores*, so plaintiffs arguments on that basis are unavailing.

■ Nevertheless, the Ninth Circuit has recognized an integrity of the regulatory process theory that is similar to the fraud created the market theory articulated in *Shores*. In *Arthur Young*, 549 F.2d at 695, the Ninth Circuit stated:

> Just as the open market purchaser relies on the integrity of the market and the price of the security traded on the open market to reflect the true value of securities in which he invests, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue.

Thus, the Ninth Circuit has accepted a presumption of reliance on the integrity of the regulatory process as a substitute for proof of individual reliance in initial public offerings. *See In re Fortune Systems Securities Litigation*, 680 F.Supp. 1360, 1372 (N.D.Cal.1987).

In *Lubin*, this court noted that plaintiffs must show how they relied upon regulatory process before they can benefit from the *Arthur Young* reliance presumption. *Lubin*, 688 F.Supp. at 1446. This complaint is silent as to facts or allegations supporting the theory that plaintiffs relied on the integrity of the regulatory process. Thus, the plaintiffs cannot invoke the *Arthur Young* presumption of reliance.

### 3. Section 18 Claim

■ Touche argues that certification of plaintiffs' § 18 claim would violate Rule 23(b)(3) because individual issues of reliance would predominate over common issues. Section 18 provides a cause of action for individuals who rely on false or misleading statements filed by a corporation with the SEC. 15 U.S.C. § 78r. This court has found that § 18 requires plaintiffs to plead actual, or eyeball, reliance on the filed document. Because plaintiffs must prove actual reliance in order to recover on their § 18 claims, individual issues of actual reliance do exist. As discussed below, however, this does not mean that individual issues predominate over common ones.

### 4. Common Issues Predominate and Superiority

Under Rule 23(b)(3), the court must find that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

Touche argues that without the presumption of reliance, either under *Basic, Shores,* or *Arthur Young*, the noteholders would be required to plead and prove individual reliance on the alleged misrepresentations of defendants. Touche reasons that individual questions would predominate over the common questions thereby precluding class certification on the § 18 claim for all securities and on the § 10(b) claims for the subordinated notes.

As noted, the court is persuaded by Touche's challenges that the complaint does not adequately plead facts that would entitle plaintiffs to invoke a presumption of reliance. Nonetheless, it does not necessarily follow that class certification is inappropriate. The issue is whether the individual questions concerning reliance would predominate over the common questions of the suit. In this case, numerous common questions of fact and law exist. Plaintiffs have alleged a common course of wrongdoing based on the same misrepresentations. As this court found in *Lubin*, "it would

defy common sense to find that class certification is defeated by the possibility of individual questions appertaining to one of the elements of one of the case's causes of action." *Lubin,* 688 F.Supp. at 1460.

 Other courts faced with the same predicament have developed a bifurcated approach. That is, the case can proceed first on the common issues concerning the misstatements, the materiality, and other elements. Then, if necessary, a separate proceeding can be held to determine the reliance question. This approach has been criticized as merely delaying the inevitable and has masking a question as to the manageability of the class action. Despite these criticisms, however, the approach is accepted in the Ninth Circuit. And the court is convinced that the class action device is a superior method for determining these claims. The alternative would be to unleash thousands of individual suits into the judicial system, and risk that many plaintiffs would be unable to seek redress because of economics. A class action will provide the most fair and efficient adjudication of this case. Accordingly, Touche's argument does not preclude class certification of the noteholders because the common issues greatly outweigh the individual issues.

### D. *Class Period*

 Plaintiffs ask the court to certify a class of purchasers of MDC securities for the period between April 1, 1985 and April 6, 1989. Touche argues that the class period should extend only to November 22, 1988. Touche argues that, as alleged in the complaint, between May 18, 1988 and November 22, 1988, MDC began to reveal a series of adverse facts contrary to earlier representations about the financial health of MDC. (Complaint ¶ 108). Accordingly, Touche argues that any reliance on the market after the November 22, 1988 disclosure would be unreasonable.

However, the complaint further alleges that the initial disclosures by MDC between May 18, 1988 and November 22, 1988 were not complete. Plaintiffs allege that the full truth was not disclosed until April 6, 1989 when MDC issued its 1989 Form 10–K. Whether the disclosures in May and November of 1988 were sufficient to cure the prior misrepresentations, and whether the purchasers could reasonably rely on the market after those disclosures is a question of fact that can be more adequately explored at trial. *In re Activision,* 621 F.Supp. at 432–33; *Weinberger,* 102 F.R.D. at 847–48. For purposes of a class certification motion, the court presumes that the allegations in the complaint are true. An inquiry by the court as to whether the November 22, 1988 disclosure cured the prior misrepresentations involves an inappropriate review of the merits. Accordingly, the court rejects Touche's contention that the class period should be limited at this time.

For the above reasons, the court finds that the common issues predominate over the individual issues presented in this action. The court also finds that a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby:

(1) grants the foreign Drexel defendants' motion to dismiss the complaint against them for lack of personal jurisdiction, and defers ruling on their motions to dismiss for failure to state a claim and improper service of process;

(2) grants the individual Drexel defendants' (Michael Milken, Lowell Milken, James Dahl, Bruce Newberg, Gary Winnick, Joseph Murphy, James Dahl, Issac Burnham, II, Michael Gellert, Sylvan Schefler, and the 28 individuals from Drexel known as the Frederick Joseph defendants) motion to dismiss counts one (§ 10(b)) and four (fraud and deceit) for failure to satisfy Rule 9(b); and grants their motion to dismiss the Rule 10(b)(5) claims under Rule 12(b)(6) for failure to properly allege aider and abetter, conspiracy, or control person liability;

(3) denies Touche's motion to dismiss counts one, two, and four based on Rule 9(b);

(4) dismisses the negligent misrepresentation claim against Lowell Milken, Michael Milken, Gary Winnick, James Dahl, and Bruce Newberg for failure to allege a duty to disclose;

(5) grants Touche's motion to dismiss count two for § 18 liability based on the failure to plead actual reliance;

(6) denies Touche's motion to dismiss pendent state law claims;

(7) denies Touche's motion to strike references to integrity of the market;

(8) denies the individual Drexel defendants' motion to stay and bifurcate the proceedings against them;

(9) certifies a class action of all persons who purchased securities of MDC Holdings, Inc. from April 1, 1985 through April 6, 1989 and suffered a loss as a result of the defendants' alleged conduct. "Securities" includes MDC's common stock; 7% subordinated notes due April 1993; subordinated exchangeable variable rate notes due July 1994; 10½% subordinated notes due April 1995; common stock purchase warrants; and 11¼% senior subordinated notes due May 1996.

All dismissals are without prejudice. Plaintiffs have 30 days leave in which to amend the complaint to cure the above mentioned deficiencies.